

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00269-CR

FREDRICK STEINBERGER, III                          APPELLANT

V.

THE STATE OF TEXAS                                      STATE

----------

## FROM THE 97TH DISTRICT COURT OF ARCHER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Fredrick Steinberger, III, appeals his conviction and sentence for a drug offense after the trial court adjudicated his guilt and revoked his deferred-adjudication community supervision. In a single issue, Appellant claims there is a fundamental variance between his name as alleged in the State's motion to adjudicate and the proof offered at the hearing on the State's motion. We affirm.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts and Procedural History**

An indictment returned to the 97th District Court by an Archer County grand jury on September 2, 2008, in cause number 2008-0000029A-CR, charged "Frederick Steinberger, III" with possession of less than a gram of methamphetamine. Later that month, on the 29th, Fredrick Steinberger, III, the defendant in that case, pled guilty and the trial court ordered him to pay a fine and placed him on two years' deferred-adjudication community supervision. A Guilty Plea Memorandum, containing admonishments and waivers refers to the defendant as "Fredrick Steinberger, III" and is signed in numerous places on lines beneath which appear the word "DEFENDANT" by "Fredrick D. Steinberger, III." The trial court's Order of Deferred Adjudication-Community Supervision and its Order Imposing Conditions of Community Supervision both refer to "Fredrick Steinberger, III" as defendant and are both signed by "Fredrick D. Steinberger III."

On March 23, 2010, the State moved to adjudicate and impose sentence, alleging that "Fredrick David Steinberger" had committed three new offenses. On June 6, 2011, at a hearing on its motion, Appellant pled not true, the State abandoned two allegations and presented evidence showing that during the term of his community supervision Appellant had assaulted a public servant. The trial court granted the State's motion, adjudicated Appellant guilty, and sentenced him to two years' confinement in state jail.

The trial court's order adjudicating guilt and imposing state jail confinement refers to "Fredrick Steinberger, III" as the defendant. The trial court's certification of defendant's right of appeal dated June 3, 2011, refers to "Fredrick Steinberger, III, Defendant" and above the line labeled "Defendant" is signed "David Steinberger." Another trial court certification of defendant's right of appeal, this one dated July 25, 2011, refers to "Fredrick David Steinberger, Defendant" and above the line labeled "Defendant" is signed "Fredrick David Steinberger III."

## Discussion

Appellant contends that the State's proof of his name at the hearing on its motion to adjudicate created a fatal variance from the allegation in its motion, which alleged his name as "Fredrick David Steinberger."

The record shows that the trial court opened the hearing as follows:[2]

> THE COURT: All right. Call Cause No. 2008-29A-CR, The State of Texas versus Fredrick David Steinberger set today on the State's Motion to Proceed with Adjudication of Guilt. Is the State ready?
>
> MR. McGAUGHEY: The State's ready, Your Honor.

---

[2]The court reporter spelled Appellant's first name throughout the reporter's record as "Frederick." Where Appellant's brief quotes his name from portions of the reporter's record in which it appears, the brief has changed the reporter's record spelling to "Fredrick," which is also how Appellant's signature appears in documents in the clerk's record. Appellant does not argue that any variance exists due to the reporter's record spelling his first name with an additional "e." To be consistent with Appellant's briefing and signature, therefore, we likewise drop the second "e" where we quote the reporter's record in this opinion. Appellant's name quoted from documents in the clerk's record, on the other hand, such as the indictment, is spelled as it originally appears in those documents.

3

THE COURT: Is the defendant ready?

MR. BARBER [for the Defense]: Ready, Your Honor.

THE COURT: And you're Fredrick David Steinberger?

THE DEFENDANT: Yes, sir.

The State's attorney first called probation officer Robert Geurin and asked if he knew "Fredrick Steinberger III, also known as Fredrick David Steinberger." Guerin testified that he knew him as "Mr. Steinberger, yes, Fredrick Steinberger," and that he had supervised him while he was on probation. Guerin then pointed out the person he had supervised as the "gentleman sitting at the table there— next to your left." He also testified that the individual he had identified in open court as the person he had supervised was the same person placed on probation in Cause number 2008–0000029A–CR.

Archer County Sheriff Staci Beesinger testified that she had a good rapport with Appellant—whom she referred to as "David" and "Davy"—having dealt with him several times in the past. She also testified as follows:

> Q. Are you familiar with a person named Fredrick David Steinberger?
>
> A. Yes.
>
> Q. Also known as Fredrick Steinberger, III?
>
> A. Yes.
>
> Q. Is that person present in court today?
>
> A. Yes.

4

Q. Would you point him out for the Judge?

A. David.

Q. You've pointed to the person immediately to the right of Mr. Payne the defense counsel; is that correct?

A. Yes, sir.

MR. McGAUGHEY: Your Honor, I would ask the record reflect the identification of the defendant or respondent by this witness.

THE COURT: It will.

The State's next witness, Archer County Constable Clayton Brett Hoff testified as follows:

Q. . . . Are you acquainted with a person named Fredrick David Steinberger sometimes referred to as Fredrick Steinberger, III?

A. Yes, I am.

Q. Is that person present in court today?

A. Yes. He's sitting right here in overalls.

Q. You've pointed to the person immediately to the right of Mr. Payne the defense counsel; is that correct?

A. Yes.

MR. McGAUGHEY: Your Honor, I would request the record reflect the identification of the respondent by the witness.

THE COURT: It will.

The sole defense witness was Archer County District Clerk Judy McLemore. She testified that she had resided in that county for sixty-four years

5

and that before becoming District Clerk she had owned a title company. She further testified as follows:

Q. . . . . Are you familiar with Fredrick David Steinberger, III?

A. Yes, sir.

Q. Is he seated to my right?

A. Yes, sir.

Q. Do you know his father?

A. Yes, sir, I did.

Q. You knew him in his lifetime?

A. Yes.

Q. And what was his name?

A. David.

Q. You called him David, but did you know what his name was? Do you know what [sic] his name appeared in title records in this county?

A. Oh, gosh. I'm trying to think. I don't honestly remember his whole full name because I always called him David.

Q. Do you recognize the name of Fredrick David Steinberger, Jr., or the II?

A. Yes. I started to say that, but I was afraid I was wrong.

Q. Okay. Did you know the patriarch of Fredrick David Steinberger, the original, who would have been the father of junior and grandfather of the third? Did you ever know him?

A. No, sir.

The fatal variance doctrine stands for the proposition that a variance between the indictment and the evidence at trial may be fatal to a conviction because due process guarantees the defendant notice of the charges against him. *See Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995). The doctrine applies to revocations of community supervision. *Moore v. State*, 11 S.W.3d 495, 499–500 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see Taylor v. State*, 592 S.W.2d 614, 615 (Tex. Crim. App. [Panel Op.] 1980). But not every variance between the evidence at trial and the indictment is fatal; only a material variance is fatal. *Moore*, 11 S.W.3d at 500; *see Stevens*, 891 S.W.2d at 650. A variance between the charging instrument and the proof at trial is material only if it operated to the defendant's surprise or prejudiced his rights. *Moore*, 11 S.W.3d at 500; *see Stevens*, 891 S.W.2d at 650, *Human v. State*, 749 S.W.2d 832, 837 (Tex. Crim. App. 1988). Likewise, a variance between pleadings and proof at a probation revocation hearing is material only if it operated to the defendant's surprise or prejudiced his rights. *Pierce v. State*, 113 S.W.3d 431, 439 (Tex. App.—Texarkana 2003, pet. ref'd.); *see Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977). The burden to show surprise or prejudice resulting from a variance rests with the defendant. *Santana v. State*,

59 S.W.3d 187, 194 (Tex. Crim. App. 2001); *Human*, 749 S.W.2d at 837; *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981).

In this case, when the trial court asked Appellant if he was Fredrick David Steinberger as alleged in the State's motion, Appellant said, "Yes, sir." Three other witnesses testified that Appellant was known by that name. Constable Hoff testified that the defendant had committed the offense of assault on a public servant against him and that the defendant was seated in the courtroom at counsel table with the defense attorney.

During closing argument, counsel for Appellant did not argue that Appellant had received insufficient notice of the allegations against him to prepare an adequate defense or that he was surprised or otherwise misled; he simply argued that the State was bound by its pleadings and that it should have pled Appellant's name as set out in the order of deferred adjudication.

We need not decide today whether there was any variance in this case at all because Appellant has failed to satisfy his burden to show that he was prejudiced in any way by the variance he claims exists. *See Santana*, 59 S.W.3d at 194; *Human*, 749 S.W.2d at 837; *Cole*, 611 S.W.2d at 82. Accordingly, we overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2012